**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **MARGARET BLANKENSHIP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:22-cv-00018-SLC** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** *sued as Kilolo Kijakazi,* | ) | |
| *Acting Commissioner of Social Security*, | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Margaret Blankenship appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case REMANDED to the Commissioner.

## I. FACTUAL AND PROCEDURAL HISTORY

Blankenship applied for DIB and SSI in September 2011 and February 2012, respectively, alleging disability as of December 19, 2008.[1] (ECF 13 Administrative Record ("AR") 18, 175-94). Blankenship was last insured for DIB on December 31, 2014 (AR 219), and thus with respect to her DIB application, she must establish that she was disabled by that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled by his date last insured in order to recover DIB).

---

[1] Regardless of a claimant's claimed onset date, SSI is not payable until the month following the month in which a claimant files her SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month Blankenship could be eligible to receive SSI is March 2012, given that she applied for SSI in February 2012.

Blankenship's claim was denied initially and upon reconsideration. (AR 110-13, 124-25, 128-33). On February 11, 2013, Administrative law judge ("ALJ") Terry Miller conducted an administrative hearing (AR 34-109), and on March 7, 2013, rendered an unfavorable decision to Blankenship, concluding that she was not disabled because, despite the limitations caused by her impairments, she could perform a significant number of unskilled, light-exertional jobs in the national economy (AR 18-29). The Appeals Council denied Blankenship's request for review (AR 8-11), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Blankenship filed an appeal of the Commissioner's decision to this Court, and the Court subsequently remanded the case to the Commissioner pursuant to a stipulation by the parties. (AR 632-33). On remand, the ALJ held a new hearing and on February 22, 2016, issued another unfavorable decision to Blankenship. (AR 383-487). She appealed the action to this Court, which affirmed the denial. (AR 1098 at 1). Blankenship appealed that decision to the Seventh Circuit Court of Appeals, but after the parties agreed to remand the case for further proceedings, this Court granted the parties' motion for relief from judgment and remanded the case to the Commissioner for further proceedings. (AR 1098-99).

On remand, ALJ William D. Piersen conducted an administrative hearing, at which Blankenship, who was represented by counsel, and a vocational expert ("VE") testified. (AR 1031-63). The ALJ then issued a new decision dated September 16, 2021, again denying Blankenship's applications for disability. (AR 990-1019). Blankenship filed a complaint with this Court on January 14, 2022, seeking relief from the Commissioner's decision. (ECF 1). In her opening brief, Blankenship challenges the mental and physical residual functional capacity ("RFC") assigned by the ALJ, and asserts that the ALJ failed to properly consider her "strong"

2

work history when assessing her symptom testimony. (ECF 17 at 6).

As of the ALJ's September 16, 2021, decision, Blankenship was fifty-four years old (AR 177, 1017); had a high school education (AR 223); and had more than twenty years experience as a sanitation worker (AR 224, 1017). In her application, Blankenship alleged disability due to heart arrhythmia, asthma, acute anxiety, severe depression, and a hernia. (AR 223).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy.[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920. "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(e), 416.920(e).

to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

In the ALJ's September 16, 2021, decision, which became the final decision of the Commissioner, the ALJ observed at the outset that Blankenship last met the insured status requirements for DIB on December 31, 2014. (AR 993). At step one of the five-step analysis, the ALJ noted that while Blankenship had income after her alleged onset date of December 19, 2008, such income was severance pay and thus was not disqualifying. (*Id.*). At step two, the ALJ found the following severe impairments: right shoulder problems (including degenerative changes, tendinopathy/tears, and bursitis; status post right shoulder surgery), right knee problems (status post arthroscopic surgery), and obesity. (*Id.*). At step three, the ALJ concluded that Blankenship did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1004).

The ALJ assigned Blankenship the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she should not climb ropes, ladders, or scaffolds and she can only occasionally kneel, crouch, crawl, bend and stoop in addition to what is required to sit, and use ramps and stairs. Aside from use of ramps and stairs on an occasional basis, the claimant should not work upon uneven surfaces. The claimant should also avoid working upon wet and slippery surfaces. The claimant can perform the balance required of such activities. The claimant should further avoid work within close proximity to open and exposed heights and open and dangerous machinery, such as open flames and fast-moving/exposed blades. Starting in 2014, she is also limited to occasional use of the right dominant upper extremity for overhead reaching and overhead work.

(AR 1005).

The ALJ determined at step four that given the foregoing RFC, Blankenship could not perform her past relevant work. (AR 1017). However, at step five the ALJ found that Blankenship could perform a significant number of unskilled, light-exertional jobs in the

national economy, including sorter, packer, and cleaner. (AR 1017-18). Therefore, Blankenship's applications for DIB and SSI were denied. (AR 1019). The Court will now turn to the merits of Blankenship's arguments, addressing them in the following order: (1) the mental RFC; (2) Blankenship's work history; and (3) the physical RFC.

*C. Mental RFC*

Blankenship contends that the ALJ erred by rejecting all of the mental health opinions of record and assigning her no mental limitations in the RFC. (ECF 17 at 16-20). Specifically, she argues that the ALJ "cherry picked" the opinions of Stefanie Wade, Psy.D., H.S.P.P, an examining psychologist; erred by assigning only "little weight" to the opinions of the reviewing state agency psychologists; and "played doctor" when determining she had just "mild" mental limitations and made no provision for them in the RFC. (*Id.*).

1. <u>Applicable Law</u>

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545(a)(3),

6

416.945(a)(3). When determining the RFC, the ALJ must consider all medically determinable

impairments, mental and physical, even those that are non-severe. 20 C.F.R. §§ 404.1545(a)(2),

416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

   2. Dr. Wade's Examining Opinions

   Dr. Wade examined Blankenship in March 2012 and August 2014 at the request of the

Social Security Administration. (AR 329-33, 951-55). In her 2012 medical source statement, Dr.

Wade opined that Blankenship's daily routine was not "well-established," "[s]he needs some

support from others to accomplish her daily tasks," and "[h]er ability to sustain these efforts on a

daily basis appears to be impaired." (AR 329, 332). Dr. Wade assessed that Blankenship's

understanding appeared adequate, her memory was "fair" for task instructions, and she was

"likely to have good social interactions." (*Id.*). However, Dr. Wade also opined that Blankenship

"has poor concentration, and her stress tolerance is minimal." (*Id.*). Dr. Wade assigned a Global

Assessment Functioning ("GAF") current score of 50 and a highest-past-year score of 55.[3] (AR

333). In August 2014, Dr. Wade concluded the same as in her prior evaluation, except for stating

that Blankenship "needs *a great deal* of support from others to accomplish appropriate daily

tasks."[4] (AR 951, 954 (emphasis added)). The ALJ wrote several paragraphs about Dr. Wade's

_____

   [3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American
Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF
score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)
or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* A
GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic
attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or
co-workers). *Id.* "The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No.
13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citation omitted). However, Dr. Wade and
several of the state agency psychologists used GAF scores in assessing Blankenship, so they are relevant here. *See
id.* (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Knapp v. Berryhill*, 741 F. App'x 324, 329
(7th Cir. 2018); *Elizabeth A.D. v. Saul*, No. 19 C 6024, 2021 WL 148831, at *11 (N.D. Ill. Jan. 15, 2021).

   [4] Also, Dr. Wade did not assign a GAF score in her August 2014 examination. (AR 951-55).

medical source statements, but ultimately assigned the opinions "very minimal/limited weight." (AR 1001). Blankenship contends the ALJ "fail[ed] to acknowledge pertinent aspects of [Dr. Wade's] evaluations, which contradict the RFC." (ECF 17 at 18).

More particularly, Blankenship begins by criticizing the ALJ's first paragraph pertaining to Dr. Wade's opinion, which reads as follows:

> Dr. Wade opined that the claimant was likely to have fair memory of task instructions, that her understanding appeared to be adequate, and that she was likely to have good social interactions. She also noted that the claimant's concentration was poor, that she had minimal stress tolerance, and that her ability to sustain simple daily activities was impaired. However, at no point did Dr. Wade opine that the claimant's ability to concentrate was moderately, markedly or extremely limited or that she was unable to concentrate at all. In addition, at no point did Dr. Wade opine that the claimant's ability to sustain simple daily activities was moderately, markedly, or extremely impaired or that she was unable to sustain simple daily activities at all. Furthermore, at no point did Dr. Wade opine that the claimant was moderately, markedly, or extremely limited in tolerating stress or that she was unable to tolerate any stress.

(AR 1001 (internal citations omitted)). Blankenship asserts that the ALJ improperly discounted Dr. Wade's opinion because "[Dr. Wade] did not use the exact terminology the ALJ was looking for . . . ." (ECF 17 at 19).

Blankenship makes a valid point. The ALJ discounts Dr. Wade's finding that Blankenship had "poor concentration" by stating that Dr. Wade did not find Blankenship was "moderately, markedly, or extremely impaired." (AR 1001). This reflects that the ALJ illogically equated "poor" concentration with minimal to no concentration limitations. (*Id.*). Also, Dr. Wade found in the 2014 examination that Blankenship "needs a great deal of support from others to accomplish appropriate daily tasks" and that "[h]er ability to sustain these efforts on a daily basis appears to be impaired." (AR 954; *see also* AR 332 (finding same in 2012 examination)). The ALJ discounted these findings by stating that Dr. Wade never opined Blankenship's ability to

sustain simple daily activities was "moderately, markedly, or extremely impaired." (AR 1001).

Again, this reflects that the ALJ illogically equated needing "a great deal of support from others"

with minimal to no limitations in completing daily tasks. (*Id.*). Similarly, the ALJ discounted Dr.

Wade's opinion that Blankenship's "stress tolerance is minimal" by stating that Dr. Wade did

not say Blankenship was "moderately, markedly, or extremely limited in tolerating stress . . . ."

(*Id.*). This too is illogical reasoning. When stating a person can tolerate only "minimal stress,"

this reasonably infers that the person has more than minimal limitations in tolerating stress. The

ALJ must sufficiently explain his reasoning to build an "accurate and logical bridge" between

the evidence of record and the RFC, *Craft*, 539 F.3d at 673 (citation omitted), 677, and in this

paragraph the ALJ did not do so.

In the next paragraph, the ALJ states Dr. Wade's conclusion that Blankenship had "poor"

concentration must have been based on Blankenship's subjective statements, because Dr. Wade

also observed that Blankenship was "mostly attentive to the tasks assigned, put forth good effort,

[and] was orientated times three and appropriately interacted." (AR 1001). However, as the

Seventh Circuit has emphasized, "[m]ental-health assessments normally are based on what the

patient says, but only after the doctor assesses those complaints through the objective lens of her

professional expertise." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (citation

omitted); *see also Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). It is significant that Dr.

Wade concluded in her medical source statement that Blankenship "*has* poor concentration" not

merely that Blankenship *states* she has poor concentration. (AR 332 (emphasis added)).

The ALJ also viewed Dr. Wade's opinions as inconsistent with the treatment notes and other

records dated during that same time period. (AR 1001). The ALJ points out that for the most part

Blankenship denies experiencing significant mental health symptoms to providers, and the

9

providers' notes do not reflect significant mental health symptoms. (*Id.*). Blankenship does not materially contest the ALJ's characterization of the treatment records near in time to Dr. Wade's opinions.[5] (*Id.*; *see, e.g.*, AR 325-26 (reflecting essentially normal mental health findings in a "disability physical" in March 2012)). Thus, the ALJ's discounting of Dr. Wade's opinion is not entirely without support. This reason, however, standing alone is insufficient to bridge the material gaps in logic made by the ALJ in other respects.

The ALJ also relied on the fact that Blankenship was never "hospitalized on an inpatient basis for a psychiatric reason," had not sought outpatient care from a mental health specialist, and "almost always denied feeling suicidal and homicidal when she was seen by the various medical sources of record after the alleged onset date." (AR 1004). Yet, "[c]oncluding that the claimant is not a raving maniac who needs to be locked up is a far cry from concluding that she suffers no limits on her ability to function." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (citation and internal quotation marks omitted). Further, "it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Seamon v. Barnhart*, No. 05-C-13-C, 2005 WL 1801406, at *20 (W.D. Wis. July 29, 2005) (citation omitted).

In sum, the ALJ applied illogical reasoning to a material extent when discounting Dr. Wade's 2012 and 2014 opinions, which likely impacted the mental RFC. This error necessitates

---

[5] Blankenship does criticize the ALJ for holding the lack of treatment records against her, asserting that "it is noted frequently throughout the record that [she] often did not have insurance . . . ." (ECF 17 at 12; *see, e.g.*, AR 1036, 1050, 1375); *see Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) ("[T]he ALJ may not draw any inferences about a claimant's condition from this failure [to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care." (citation and internal quotation marks omitted)). But the ALJ *did* consider that Blankenship lacked health insurance much of the relevant period (AR 994, 1004, 1008, 1015, 1016), and the issue was discussed during the hearing (AR 1036, 1042, 1050-51). As such, the ALJ duly explored Blankenship's proffered reason for failing to seek medical care, considering it in context with the rest of the evidence of record.

a remand of the ALJ's decision to reconsider Dr. Wade's opinions and the mental RFC. *See Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 724 (7th Cir. 2020) ("The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge." (citations omitted)).

3. The State Agency Psychologists' Reviewing Opinions

Blankenship also argues that the ALJ erred by assigning "little weight" to the opinions of the state agency psychologists, who reviewed her record and issued opinions in 2012 and 2014. (ECF 17 at 17 (citing AR 1002)). Joseph Pressner, Ph.D., concluded in April 2012 that Blankenship had moderate limitations in sustaining concentration and pace for extended periods, working in proximity to others without being distracted by them, and completing a normal workday and workweek at a consistent pace, but could "handle light stressors of unskilled work with little supervision and with little distraction." (AR 344-45; *see also* AR 357 (assigning moderate limitations in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace)). Three months later, Ken Lovko, Ph.D., another reviewing state agency psychologist, concluded similarly. (AR 361-63).

In August 2014, Amy Johnson, Ph.D., a third reviewing state agency psychologist, found that Blankenship had moderate limitations in maintaining attention and concentration for extended periods, interacting appropriately with the public, accepting instructions and responding appropriately to criticisms from supervisors, and getting along with coworkers without distracting them. (AR 601-03). Dr. Johnson concluded in her narrative summary:

> [Claimant's] attention and concentration are moderately impacted but appear reasonable for tasks, and [claimant] appears to be able to tolerate superficial, casual interactions with others.

11

> Claimant has the mental capacity to understand, remember, and follow simple instructions. [Claimant] is restricted to work that involves brief, superficial interactions [with] fellow workers, supervisors and the public. Within these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, [claimant] is able to sustain attention and concentration skills to carry out work like tasks with reasonable pace and persistence.

(AR 602). Two months later, Donna Unversaw, Ph.D., another reviewing state agency psychologist, reached the same opinion. (AR 627-29).

The ALJ discounted these opinions by finding them "not consistent with the evidence of record when viewed as a whole," including Blankenship's lack of inpatient psychiatric hospitalizations; lack of outpatient mental health treatment; "lack of moderate, marked, and extreme limitations" in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself; and little to no discussion of her mental health symptoms in other treatment notes. (AR 1002). Of course, the ALJ is entitled to consider what treatment a claimant did, or did not, participate in. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Wanner v. Kijakazi*, No. 20-CV-987, 2021 WL 3721846, at *4 (E.D. Wis. Aug. 23, 2021) ("[T]he nature of a claimant's treatment is a relevant factor in assessing the severity of a claimant's symptoms." (citing SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017)). Having said that, "an ALJ must approach issues such as treatment . . . with caution when a claimant has a mental illness." *Barnes v. Colvin*, 80 F. Supp. 3d 881, 887 (N.D. Ill. 2015). "[M]ental illness . . . may prevent the sufferer from . . . submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (citations omitted). And while a lack of any psychiatric hospitalization may be a valid reason to discount extreme mental limitations, *see, e.g.*, *Foor v. Berryhill*, No. 18-64, 2019 WL 1296882, at *4 (W.D. Pa. Mar. 21, 2019), here the ALJ used it as a means to assign *no* mental limitations whatsoever.

12

As noted earlier, Blankenship does not meaningfully contest the ALJ's characterization of the treatment records near in time to the state agency psychologists' opinions—that is, the ALJ's observation that for the most part Blankenship denied experiencing significant mental health symptoms to providers. (AR 1001). More concerning, however, is that the ALJ materially mischaracterized the record when stating that the state agency psychologists did not find any "moderate, marked, and extreme [mental] limitations." (AR 1002). To the contrary, these psychologists found that Blankenship had moderate limitations in several mental health categories, including concentration and socialization. (AR 343-44 (Dr. Pressner); AR 361-62 (Dr. Lovko); AR 601-02 (Dr. Johnson); AR 627-28 (Dr. Unversaw)). Further, Dr. Pressner's and Dr. Lovko's assessments are consistent with Dr. Wade's in that they all identify at least moderate limitations in sustaining concentration and tolerating stress, and all assigned a GAF score of 50, which is indicative of serious symptoms as explained *supra* in footnote 3. (*See* AR 333, 345, 363).

In sum, the ALJ materially mischaracterized the opinions of the state agency psychologists with respect to the severity of limitations assessed and their consistency with other evidence of record. This bolsters the conclusion reached *supra* to remand this case for reconsideration of the medical source opinions of record pertaining to Blankenship's mental health and the mental RFC.[6]

Because a remand is indicated based on Blankenship's argument challenging the mental RFC, the Court could end its analysis here. However, because this case involves a ten-year old

---

[6] Because a remand of Blankenship's mental RFC is necessary based on the ALJ's handling of Dr. Wade's and the state agency psychologists' opinions, the Court need not reach Blankenship's third argument challenging the mental RFC—that the ALJ "played doctor" when assessing her no mental limitations in the RFC.

administrative record and two prior appeals and remands (*see* ECF 17 at 4; ECF 18 at 1-2), the

Court will go on to consider Blankenship's other two arguments pertaining to her work history

and the physical RFC in an effort to complete the record.

*D. Work History*

Blankenship also argues that the ALJ materially erred by failing to discuss her strong

work history—that is, her employment with Kraft Foods for more than twenty years (AR

224)—when assessing the credibility of her symptom testimony. (ECF 17 at 15-16).

An ALJ is not statutorily required to consider a claimant's work history, but in *Hill v.

Colvin*, the Seventh Circuit Court of Appeals acknowledged that "[a] claimant with a good work

record is entitled to substantial credibility when claiming an inability to work because of a

disability." 807 F.3d 862, 868 (7th Cir. 2015) (citations and internal quotation marks omitted);

*Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016). Having said that, the Seventh Circuit later

clarified that "work history is just one factor among many, and it is not dispositive." *Loveless v.

Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citation omitted) ("[T]he ALJ's silence [about the

claimant's good work record] is not enough to negate the substantial evidence supporting the

adverse credibility finding."); *see also Prill v. Kijakazi*, 23 F.4th 738, 747 (7th Cir. 2022); *Vang

v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020); *Best v. Berryhill*, 730 F. App'x 380, 383 (7th Cir.

2018); *Summers v. Berryhill*, 864 F.3d 523, 528-29 (7th Cir. 2017).

The ALJ considered several factors when finding that Blankenship's symptom testimony

was just partially credible, including the objective medical evidence (AR 1006-16), her activities

of daily living (AR 1006, 1015-16), and the effectiveness and side effects of any medications

(AR 1011-12, 1016). The ALJ also noted Blankenship's receipt of unemployment compensation

after her alleged onset date, which he stated "indicates that the claimant alleged to her state

governmental entity that she was able to work while, at the same time, she alleged to the Social Security Administration that she was disabled." (AR 1002-003; *see also* AR 1015). Significantly, Blankenship does not directly challenge the ALJ's assessment of this evidence as to the credibility of her symptom testimony.

Therefore, while the ALJ should have considered Blankenship's strong work history, his silence on the matter, in and of itself, does not require a remand. Having said that, because this case is already being remanded to reconsider the mental RFC, the ALJ is encouraged upon remand to also consider Blankenship's strong work history in the context of assessing her symptom testimony.

*E. The Physical RFC*

Blankenship argues that the ALJ erred when assigning the physical RFC by failing to: (1) include the state agency physicians' opinions that she was "unable to crawl or kneel," (2) assign controlling weight to the opinion of her treating physician, and (3) consider the effect of her obesity on her other impairments. (ECF 17 at 8-15).

1. <u>The State Agency Physicians' Opinions</u>

In March 2012, M. Brill, M.D., a state agency physician, reviewed Blankenship's record and assigned her various postural and environmental limitations, and opined that she could lift ten pounds frequently and twenty pounds occasionally and walk six hours in a eight-hour workday. (AR 335-42). J. Sands, M.D., another state agency physician, reviewed Blankenship's record in July 2012 and affirmed Dr. Brill's opinion. (AR 379). The ALJ gave these opinions "significant weight," finding them "generally consistent with the evidence of record . . . ." (AR 1007). Blankenship asserts that the ALJ misrepresented Dr. Brill's and Dr. Sand's opinions when stating those doctors opined she could perform "occasional . . . kneeling . . . and crawling . . . ."

(ECF 17 at 8-9). She contends Dr. Brill wrote that she was "unable to crawl or kneel," and that the ALJ materially erred by failing to include this limitation in the physical RFC. (ECF 17 at 9 (citing AR 336)).

Blankenship's proffered interpretation of Dr. Brill's opinion is not reasonable. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-69 (7th Cir. 2010) (stating that the court reads an ALJ's decision "as a whole and with common sense"). In context, Dr. Brill stated:

> *IMCE revealed* lungs clear. Peripheral pulses positive. All extremities equal, pu[r]poseful and to command. [N]o motor focal deficits. Grip is 3/5 in both ue rom in wrist wnl. [Claimant] complained of lower back pain and some joint pain in arms and knees. [Claimant] complains of numbness/tinglin[g] in left leg and bilateral hands. The [claimant] had positive slr and abnormal squat *unable to crawl or kneel*. The [claimant] had a normal heel/toe walking and normal tandem walk.

(AR 336 (emphasis added)). Thus, when reciting that Blankenship was unable to crawl or kneel, Dr. Brill was merely summarizing the findings revealed in a consultative medical examination completed by Vijay G. Kamineni, M.D., in March 2012. (*See* AR 325-26, 341). After reviewing the record, however, Dr. Brill arrived at a different opinion, concluding in his medical source statement that Blankenship could "occasionally" kneel and crawl, and that her statements about the severity of her symptoms were just "partly credible." (AR 337, 340). As already stated, Dr. Sands subsequently agreed with Dr. Brill's opinion. (AR 379).

Therefore, contrary to Blankenship's assertion, Dr. Brill and Dr. Sands indeed opined in their medical source statements that Blankenship could "occasionally" crawl or kneel. (AR 337, 379).

### 2. Dr. Kamineni's Opinion

Blankenship next argues that the ALJ erred by failing to give controlling weight to the March 2012 and August 2014 opinions of Dr. Kamineni, her treating physician, and also failed

to give good reasons for discounting them. (ECF 17 at 9-13). Blankenship filed her disability application before March 27, 2017, and thus the "treating-physician rule, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)[,]" still applies here. *See McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018) (explaining that opinion evidence is now governed by 20 C.F.R. §§ 404.1520c and 416.920c).

Under the treating-physician rule, "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). This principle, however, is not absolute, as "[a] treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. § 404.1527(d)(2)); *see Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner looks to the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see Books*, 91 F.3d at 979. The Commissioner must always give "good reasons" for the weight ultimately applied to the treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Clifford*, 227 F.3d at 870.

Dr. Kamineni examined Blankenship for a "disability physical" in March 2012 at the

17

request of the Social Security Administration. (AR 324-26, 1007). Blankenship's chief

complaints were bilateral hand numbness and low back pain, which she rated as an "eight" on a

ten-point scale. (AR 324). He noted her obesity and that she had a "stable and [s]tiff" gait. (AR

325). In a physical exam, Blankenship had tenderness to palpation in the lumbar/sacral spine,

pain in the left lumbar paraspinal muscles, a positive straight leg raise bilaterally, reduced range

of motion, an abnormal squat, but no muscle weakness. (AR 325-27). She had normal heel/toe

and tandem walking but was unable to crawl or kneel. (AR 325). She had diagnoses of carpal

tunnel syndrome, low back pain, and radiculopathy of the lumbosacral region. (AR 326). Dr.

Kamineni concluded in his narrative medical source statement:

> The patient would be able to sit for 15 minutes and then has to move as she gets
> stiff in the back. [Patient] during the interview kept shifting in the chair to get
> comfortable. Can stand for 10-15 minutes then she has to move. She would not be
> able to carry 10 pounds. S[h]e would be able to lift 10 pounds[;] she would[]not be
> able to walk 6 minutes because of back pain. [S]he has abnormal fine motor skills
> with abnormal handling of fine objects because of CTS and decreased grip
> strength.

(*Id.*).

Dr. Kamineni examined Blankenship for a second "disability physical" at the request of the

Social Security Administration in August 2014. (AR 946-49, 1007). Again her chief complaints

were low back pain, which she rated as an "eight," and carpel tunnel syndrome. (AR 946). She

reported that her back pain shoots down her legs. (*Id.*). She had full muscle and grip strength, but

reduced range of motion; tenderness to palpation in the lumbar/sacral spine, a positive straight

leg raise on the left, and abnormal heel/toe and tandem walking. (AR 948, 950). Dr. Kamineni

concluded in his medical source statement:

> The patient states she cannot sit for 30 minutes due to her low back pain. She
> states she cannot stand for 30 minutes. She states she can only carry 20 pounds a
> short distance when she is having a good day. She states she is able to walk 5

minutes but states she would definitely need to take a break. She states she cannot
lift 10 pounds over her head. She can step up an 8 inch step. She states she has
normal fine motor skills with normal handling of fine objects. . . . but states her
hands still get fatigued easily.

(AR 948).

The ALJ assigned Dr. Kamineni's opinions "little" weight, finding they were "not

consistent with the evidence of record" and "appear[ed] to be based largely on the claimant's

own subjective reports . . . rather than on Dr. Kamineni's clinical judgment and his report of her

objective physical examination findings." (AR 1007). The ALJ also commented that Dr.

Kamineni's 2012 opinion was "not well supported by imaging . . . , [and] surrounding medical

treatment records . . . ." (AR 1000). As stated earlier, the ALJ instead assigned "significant"

weight to the state agency physicians' opinions, finding them "generally consistent with the

evidence of record . . . ." (AR 1007).

Blankenship contends that the ALJ erred by not assigning "controlling weight" to Dr.

Kamineni's opinions as her treating physician. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Not

so. It is readily apparent that both of Dr. Kamineni's opinions are inconsistent with the reviewing

state agency physicians' opinions. To review, Dr. Brill opined in March 2012 that Blankenship

could lift and carry ten pounds frequently and twenty pounds occasionally; stand six hours in an

eight-hour workday with normal work breaks; sit for six hours in an eight-hour workday with

normal work breaks; and occasionally perform various postural positions, except could never

climb ladders, ropes, or scaffolds. (AR 335-42). Dr. Sands affirmed Dr. Brill's opinion in July

2012. (AR 379). In August 2014, Dr. Brill concluded the same, except that he found Blankenship

could climb ladders, ropes, or scaffolds occasionally. (AR 599-601). In October 2014, M. Ruiz,

M.D.,  reached the same conclusion as Dr. Brill did two months earlier. (AR 625-27).

Given this inconsistency of record, neither of Dr. Kamineni's opinions were entitled to

"controlling weight" under the treating-physician rule. 20 C.F.R. §§ 404.1527(c)(2), 416,927(c)(2); *see Clifford*, 227 F.3d at 870 (stating that a treating physician's opinion is entitled to controlling weight "if it is well supported by medical findings and not inconsistent with other substantial evidence in the record"). But that is not the end of it. "Even if not giving the opinion controlling weight, an ALJ must give 'good reasons' for discounting a treating physician's opinion." *Jannson v. Colvin*, No. 13 C 4691, 2015 WL 1810242, at *5 (N.D. Ill. Apr. 17, 2015) (collecting cases).

As the ALJ observed, the language that Dr. Kamineni used in his 2014 medical source statement—"The patient states . . ." or "She states . . ." (AR 948; *see* AR 996, 1009)—raises a reasonable inference that the restrictions therein were "based largely on [Blankenship's] own subjective reports of her functioning and limitations . . . ." (AR 1007); *see Stevenson*, 105 F.3d at 1155 ("The ALJ was entitled to make reasonable inferences from the evidence before him . . . ." (internal citation omitted)). An ALJ may discount a physician's opinion where the "limitations were based almost entirely on [the claimant's] subjective complaints rather than objective evidence." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *see Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) (stating that a medical opinion based solely on the claimant's subjective complaints was "an appropriate reason for an ALJ to discount an opinion" (citation omitted)); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints." (citations omitted)); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) ("The portion of Dr. Cascino's report concerning Mr. Diaz's limited ability to sit, stand or walk appears to be based upon Mr. Diaz's own statements about his

functional restrictions at the time of the examination. The ALJ could consider this portion of the report less significant than the doctor's other findings . . . ." (citation omitted)). Therefore, the ALJ supplied a good reason to discount the restrictions in Dr. Kamineni's August 2014 medical source statement.

But the language used by Dr. Kamineni in his March 2012 medical source statement does not support the same inference. Dr. Kamineni did not premise his restrictions in the 2012 medical source statement by "the patient states" or "she states." (*Compare* AR 326, *with* AR 948). Therefore, when the ALJ stated that he discounted *both* of Dr. Kamineni's medical opinions because they "appear[ed] to be based largely on the claimant's own subjective reports of her functioning and limitations," his reasoning is flawed. (AR 1007).

Blankenship further contends that the ALJ ignored the clinical findings Dr. Kamineni made during the examinations that support his assigned limitations—tenderness in the spine, positive straight leg raise tests, reduced range of motion, a stiff gait, and an abnormal squat. (AR 325-27; ECF 17 at 12 ("The ALJ discusses none of these findings.")). That is not exactly so. The ALJ did expressly consider these clinical findings but then discounted them, on the basis that Blankenship had no significant deficits in muscle strength, reflexes, or sensation. (AR 1011 (citations omitted); *see also* AR 1016 (citations omitted)). But findings of normal muscle strength, reflexes, or sensation are not necessarily inconsistent with chronic back pain. "[A]s several courts in this circuit have acknowledged, even full muscle strength is consistent with impairments that cause pain and thereby affect a claimant's functional limitations, including limited abilities to stand or walk." *Otis S. v. Saul*, No. 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019); *see also id.* at *3 n.4 (collecting cases). Therefore, "it appears that the ALJ succumbed to the temptation to 'play doctor' when he independently

21

concluded that normal muscle strength is inconsistent with chronic pain." *Fansler v. Astrue*, No. 1:07-CV-00081, 2008 WL 474205, at *7 (N.D. Ind. Feb. 19, 2008).

Despite these errors, the ALJ did cite other plausible reasons to discount Dr. Kamineni's 2012 medical source statement by stating that it was "not well supported by imaging . . . [and] surrounding medical treatment records . . . ." (AR 1000; *see also* AR 995). Indeed, x-rays in 2009 (three years earlier) revealed "[m]inimal degenerative changes" in Blankenship's left hip and an "unremarkable" lumbar spine. (AR 307; *see also* AR 997); *see Skarbek v. Barnhart*, 390 F.3d 500, 503-04 (7th Cir. 2004) (finding that the physician's opinion of the claimant's knee range of motion restrictions was not supported by the x-ray evidence); *Suess v. Colvin*, 945 F. Supp. 2d 920, 928 (N.D. Ill. 2013) ("It is noted that physical examinations have provided, at best, only minimal support; x-rays do not reveal significant abnormalities . . . ."). And as the ALJ noted, Blankenship lacked treatment records near in time to Dr. Kamineni's 2012 medical source statement.[7] (AR 1000); *see generally Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant.").

Therefore, despite the ALJ's flawed reasoning in part with respect to Dr. Kamineni's 2012 medical source statement, the ALJ had at least some valid basis to discount the 2012 statement. *See Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019) ("An ALJ may not discount the opinion of an examining physician without a valid explanation . . . ." (citation omitted)). But because this case is being remanded on other grounds, the ALJ upon remand should revisit his flawed reasoning with respect to Dr. Kamineni's 2012 medical source statement and its impact,

---

[7] Blankenship again asserts that her lack of health insurance may have contributed to her failure to seek treatment, and that the ALJ should not hold her lack of treatment against her. Because the Court already addressed this argument in footnote 5 *supra*, it will not repeat that discussion here.

if any, on the physical RFC.

   3. <u>Obesity</u>

   Lastly, Blankenship argues that the ALJ failed to consider her obesity "at all" or the effect it

has on her other impairments when assigning the physical RFC. (ECF 17 at 15). Contrary to

Blankenship's assertion, the ALJ's decision contains ample evidence that the ALJ adequately

considered Blankenship's obesity.

   First, the ALJ found Blankenship's obesity to be a "severe" impairment at step two of the

five-step sequential analysis. (AR 993). At step three, the ALJ stated: "The claimant's severe

obesity (with a body mass index ranging from about 37 to 46 since the alleged onset date) has

been considered in assessing whether the listings are met or equaled, as well as in assessing the

claimant's [RFC]." (AR 1005). The ALJ also noted Blankenship's height and weight when

summarizing her symptom testimony. (AR 1006 ("60 inches tall and weighs 220 pounds")).

   When assessing Blankenship's RFC, the ALJ observed that "there is no documentation in

the medical evidence of record that, since the alleged onset date . . . she has sought any treatment

for her obesity . . . ." (AR 1016). The ALJ also considered that "although the claimant has

exhibited some abnormal physical examination findings, such as body mass index ranging from

about 37 to 46, . . . she has not generally exhibited any muscle atrophy or significant deficits in

muscle strength, reflexes, sensation, or fine finger manipulative ability . . . ." (*Id.*). Then, before

moving to step four, the ALJ summarized: "[The RFC] . . . takes into account all of the

claimant's non-severe and severe impairments. Limiting the claimant to light work provides for a

less strenuous capacity that would avoid exacerbating pain and other symptoms caused by her

severe obesity . . . . Postural and limitations to hazards do the same." (*Id.*).

Thus, the record directly contradicts Blankenship's assertion that the ALJ failed to consider her obesity when assigning the RFC. Further, "there is no indication that in assessing [Blankenship's] joint problems the [ALJ] gave insufficient weight to the effect on them of [Blankenship's] obesity . . . ." *Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006). Consequently, the ALJ's assessment of Blankenship's obesity was adequate.

To summarize, Blankenship's arguments are successful in part. The Court finds that the ALJ erred when rejecting Dr. Wade's and the state agency psychologists' opinions and including no mental limitations in the RFC, and thus the case will be remanded on that basis. Upon remand, the ALJ should also consider Blankenship's strong work history when assessing her symptom testimony, and revisit his flawed reasoning with respect to Dr. Kamineni's 2012 medical source statement and its impact, if any, on the physical RFC.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Blankenship and against the Commissioner.

SO ORDERED.

Entered this 7th day of December 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge